## AFFIDAVIT IN SUPPORT OF
## CIVIL CORFEITURE COMPLAINT

I, JAMES TAYLOR, a Special Agent with Internal Revenue Service - Criminal Investigation (IRS-CI) hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit from personal knowledge based on my participation in this investigation, including witness interviews by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all details or facts of which I am aware of relating to this investigation.

2. I, James Taylor, am an investigative or law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3. I am a Special Agent (SA) with IRS-CI, and have been since September 2012. I am duly sworn to investigate violations of the laws of the United States and its territories. I was trained at the Federal Law Enforcement Training Center in Glynco, Georgia in multiple investigative techniques involving various types of crimes, including financial and electronic crimes. I have law enforcement experience conducting and assisting in investigations involving financial crime, tax violations, and money laundering offenses. These investigations have

provided the opportunity to conduct search and seizure warrants, lead covert operations, and interview individuals in various roles of the offenses committed.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable and reasonable cause and does not set forth all of my knowledge about this matter.

## CASE BACKGROUND

5. During ongoing investigations, investigators have identified two retail jewelry stores that are owned and operated by SAMIR LADHANI (LADHANI) and KAYED JOHAR (JOHAR) which cater to individuals who make large jewelry purchases in cash, greater than $10,000, by not completing and filing the requisite forms with the government authorities. These stores, TREASURES and DIAMOND RING COMPANY in Louisville, KY are located in Jefferson Mall and Mall St. Matthews, respectively. IRS-CI's focus and role in this investigation is to target individuals who structure transactions to avoid reporting requirements, and assist individuals to avoid detection by law enforcement by not filing the requisite forms. Our investigation to date has shown LADHANI operates out of both retail establishments. JOHAR operates exclusively from DIAMOND RING COMPANY. Both businesses have failed to report to the government their receipt of cash in excess of $10,000.

6. Based upon a query of business filings found on the Kentucky Secretary of State Business One Stop Portal, the following was noted related to LADHANI and JOHAR:

    a. SAIF, Inc. d/b/a DIAMOND RING COMPANY was incorporated on July 1, 2016 with KAYED JOHAR a/k/a "Joe" or "Uncle Joe" (JOHAR) as President and an address of 5000 Shelbyville Road, Suite #1300, Louisville, KY 40207.

Attachment A-2

    b. RAJAN, Inc. d/b/a TREASURES was incorporated on July 1, 2016 with SAMIR LADHANI as President and an address of 4801 Outer Loop, Unit 216, Louisville, KY 40219.

    c. TREASURES PUNJANI, INC. was incorporated in October 17, 2002 with SAMIR LADHANI listed as Vice President and an address of 4801 Outer Loop, Unit 216, Louisville, KY 40219. This company was administratively dissolved on October 9, 2017.

7. The Currency and Foreign Transactions Reporting Act of 1970 (commonly referred to as the "Bank Secrecy Act" or "BSA") was passed by Congress and requires U.S. financial institutions and others to assist U.S. government agencies to detect and prevent money laundering. Specifically, the BSA requires financial institutions and those engaged in a trade or business to keep records of cash purchases of negotiable instruments, file reports of cash transactions exceeding $10,000, and to report suspicious activity that might signify money laundering, tax evasion, or other criminal activities.

8. Title 31 U.S.C. § 310 establishes the Financial Crimes Enforcement Network (FinCEN) as a bureau within the Treasury Department and describes its duties and powers including, but not limited to:

    a. Maintaining a government-wide data access service with a range of financial transactions information, and

    b. Analysis and dissemination of information in support of law enforcement investigatory professionals at the Federal, State, Local, and International levels.

9. As a part of these responsibilities, FinCEN has established filing requirements for trades or businesses, such as the jewelry stores owned and operated by LADHANI and JOHAR.

Under 31 U.S.C. § 5331 any person engaged in a trade or business and who, in the course of such, receive more than $10,000 in currency (cash) in one transaction (or two or more related[1] transactions) must file FinCEN Form 8300 (Form 8300). Forms 8300 must be filed by the 15th day after the date the cash was received[2] (extended if such date falls on a Saturday, Sunday, or legal holiday) and must contain:

    a. the name and address, and such other identification information as the Secretary may require, of the person from whom the coins or currency was received;

    b. the amount of coins or currency received;

    c. the date and nature of the transaction; and

    d. such other information, including the identification of the person filing the report, as the Secretary may prescribe.

10. Pursuant to 31 U.S.C. § 5324, no person shall, for the purpose of evading the report requirements prescribed by 31 U.S.C. § 5331, structure or assist in structuring, or attempt to structure or assist in structuring any transaction with a nonfinancial trade or business.

11. The BSA statutes and requisite forms aid investigators in the detection of drug trafficking, money laundering, and terrorism. When Forms 8300 go unfiled by a trade or business it allows individuals reliant on cash, including drug traffickers, to spend their cash without detection and acquire a marketable asset that they can then sell at a later date in an effort to launder the proceeds and make them appear legitimate. In the present case, a narcotics

---

[1] Transactions are considered related if the recipient knows, or has reason to know, that each transaction is one of a series of connected transactions.

[2] If multiple cash payments are received a Form 8300 must be filed within 15 days at the time the $10,000 cash threshold is reached within any 12-month period.

trafficker can use a cooperating/complicit jeweler to turn large amounts of cash ("dirty money") into legitimate goods (jewelry). These legitimate goods can then be transferred/sold to others. In the case of jewelry, its physical size, value, and lack of title (unlike vehicles and real estate), make it extremely difficult on investigators to source and trace asset transfers/sales when required forms are not filed by those with the obligation to do so.

12. Investigators queried FinCEN in August 2019 and to date no Forms 8300 have been filed by LADHANI, JOHAR, or any affiliated business entity of the two on any subject identified or otherwise.

13. Based on my training and experience and the facts as set forth in this affidavit, there is probable and reasonable cause to believe that violations of Title 31, United States Code, §§ 5331 (Reports Relating to Coins or Currency Received in Nonfinancial Trade or Business (Form 8300)) and 5324(b)(3) (Structuring Transactions to Evade Reporting Requirements) have been committed by SAMIR LADHANI and KAYED JOHAR.

## PROBABLE CAUSE

**Undercover Operation**

14. On May 9, 2018, an undercover operation utilizing an IRS-CI Special Agent in an undercover capacity was approved and later that month the operation commenced at DIAMOND RING COMPANY located within Mall St. Matthews at 5000 Shelbyville Road, Suite #1300, Louisville, KY 40207. The undercover operation lasted from May 24, 2018 to August 6, 2018.

15. During the undercover operation, two IRS-CI Special Agents operating in an undercover capacity (UCA1 and UCA2) met LADHANI at his business, the DIAMOND RING COMPANY, located in the St. Matthews Mall. LADHANI told UCA1 that he and his uncle, Joe (JOHAR), own two stores the DIAMOND RING COMPANY and TREASURES.

16. During the initial undercover meeting (May 24, 2018) UCA1 and UCA2, Special Agents with IRS-CI, spoke with the target, LADHANI, about the purchase of jewelry. UCA1 told LADHANI that he did not want to deal with other employees at the store, only him. LADHANI thanked UCA1 and told UCA1 that JOHAR was his uncle and they (LADHANI and JOHAR) have two stores in Louisville, the other being at "J-Mall" (an abbreviated nickname for Jefferson Mall) called TREASURES. During the conversation UCA1 told LADHANI that he wanted a receipt but did not want any government forms filed. LADHANI acknowledged UCA1 and responded, *"I know. We will split the payment. Don't worry about that...I know to split it."* UCA1 told LADHANI that his business was hustling and that he (UCA1) sold cocaine. Upon hearing these statements, LADHANI responded, *"That's good."* and UCA1 and LADHANI continued to talk about how the purchase would be handled related to a diamond ring for approximately $20,000. LADHANI responded to UCA1 that he would split the payment up and that he would need to see what jewelry UCA1 decided to buy.

17. On July 9, 2018, LADHANI was seen operating out of TREASURES located at Jefferson Mall and engaged UCA1 in conversation and agreed to meet UCA1 at the DIAMOND RING COMPANY store at Mall St. Matthews the following day (July 10, 2018). Once there, UCA1 again made mention of his selling cocaine and agreed to purchase a diamond ring for $25,000. UCA1 paid $12,500 cash at this meeting whereby LADHANI said, *"I can do it like uh, put it on the computer like you paid five today, five tomorrow, like..."* UCA1 then spoke of the troubles in dealing with cash and potentially getting jammed up to which LADHANI replied, *"You just split it."* LADHANI then explained that he put $3,000 of the cash towards the setting (despite the setting only costing $2,000) and then put the remaining $9,000 towards the solitaire diamond on layaway as a way to split the payment received. LADHANI then returned $500 to

Attachment A-6

UCA1, bringing his total payment to $12,000 and the outstanding balance to $13,000. LADHANI then asked UCA1 if he can pay $6,500 and $6,500 and instructed UCA1 to leave the $6,500 when he/she came back regardless of whether he (LADHANI) was present or not.

18.    At the next meeting, held on July 30, 2018, LADHANI was seen at TREASURES in Jefferson Mall where he and UCA1 spoke for several minutes about starting a business and the difficulties faced by UCA1 given his line of work (narcotics trafficking).[3] UCA1 then drove to DIAMOND RING COMPANY at Mall St. Matthews where he made an $11,000 cash payment to JOHAR. UCA1 offered to make the full $13,000 cash payment of what is owed, but JOHAR returned $2,000 of the $11,000 given by UCA1 telling him his remaining balance is $4,000 and his ring will be ready in a few days. This transaction resulted in $9,000 cash being applied to UCA1's purchase and leaves $4,000 owed. ($25,000 purchase price, less $12,000 and $9,000 payments).

19.    In the final meeting, held on August 6, 2018, UCA1 dealt with JOHAR, paid the final $4,000 owed, and left with the merchandise. All $25,000 paid over to LADHANI and JOHAR was made in cash, with serial numbers recorded.

20.    During this operation, LADHANI and JOHAR worked together to structure merchandise pricing, cash payments, and internal computer inputs in an effort to circumvent accurate point of sale recording and FinCEN reporting requirements.

---

[3] UCA1 had mentioned his dealing in cocaine on two prior meetings and during this meeting (July 30, 2019) he discusses his (UCA1) attempt to "go legit".

21. Based upon a FinCEN query of information required to be reported under the Bank Secrecy Act related to LADHANI and his businesses, investigators found no record of Forms 8300 filed on UCA1. No information was requested by LADHANI or JOHAR to allow for an accurate reporting to FinCEN of UCA1's transaction.

**Search Warrant**

22. On October 2, 2019, during the execution of the search warrant at TREASURES where LADHANI was working, two small notebooks, index cards, and business cards were found with handwritten ledgers that documented the sales of jewelry and payments in amounts greater than $10,000. There were nine instances that documented customer transactions greater than $10,000 where LADHANI received $258,700 in cash for total purchases of $359,700. In some instances, LADHANI only recorded the individual by their nickname or first name without any contact information which would make it impossible to complete the requisite forms to report the transaction to the government.

23. On October 2, 2019, LADHANI and JOHAR were both interviewed during the execution of the search warrant at TREASURES and DIAMOND RING COMPANY. LADHANI stated that he was aware of the Form 8300 filing requirements based on communication with his accountant, that if he received more than $10,000 in cash he would have to file Form 8300 with the IRS, and that he had never filed a Form 8300. JOHAR stated that he knew what Form 8300 was, understood what the form was used for, and that he never saw one filed at DIAMOND RING COMPANY.

24.     As a routine business practice LADHANI would structure transactions in order to not receive more than $10,000 in currency. This is evidenced by the undercover operation, handwritten ledgers that were kept off TREASURES and DIAMOND RING COMPANY point of sale/ cash register systems, LADHANI's statements during interviews, and supported by the fact that LADHANI has never filed Form 8300 while conducting a substantial amount of transactions which is supported by the amount of currency seized during the search warrant.

25.     LADHANI primarily sold custom made jewelry and designer watches for large amounts of currency where he would structure the transaction in amounts less than $10,000 in an attempt to not file the requisite Forms 8300. Based on a review of invoices from distributors for the DIAMOND RING COMPANY and TREASURES between February 9, 2016 and November 25, 2019 there were 125 invoices for large purchases that were reviewed which would have resulted in total cash sales of $1,799,598.

26.     On October 2, 2019, during the execution of a search warrants at the DIAMOND RING COMPANY and TREASURES the following items were seized related to the criminal violations set forth within this affidavit:

   a.   Bulk currency totaling $1,767,216.00 primarily found stored in bulk inside used cardboard boxes of which $122,095 was from TREASURES and $1,645.121 was from DIAMOND RING COMPANY.

   b.   Four items of jewelry and two watches (more particularly described in Paragraph 5 of the Complaint) belonging to a customer of LADHANI, "JW", that was being held by LADHANI, with an approximate value of $140,500, of which were

purchased with currency in amounts greater than $10,000 and no Form 8300 was filed.

## CONCLUSION

27. Based upon the evidence obtained directly from LADHANI and JOHAR during the undercover operation, the evidence found during the search warrant related to handwritten ledgers and bulk currency, a review of the business records of the DIAMOND RING COMPANY and TREASURES, and the other facts set forth in this affidavit I believe that there is probable and reasonable cause that the seized currency in the amount of $1,767,216.00 and jewelry of approximately $140,500 constitutes proceeds and property involved in violations of Title 31, United States Code, §§ 5331 (Reports Relating to Coins or Currency Received in Nonfinancial Trade or Business (Form 8300)) and 5324(b)(3) (Structuring Transactions to Evade Reporting Requirements) that were committed by SAMIR LADHANI and KAYED JOHAR. Consequently, the defendant property is subject to forfeiture under 31 U.S.C. § 5317(c)(2).

Respectfully submitted,

JAMES TAYLOR
Special Agent
IRS Criminal Investigation